

**FITAPELLI & SCHAFFER**
— ATTORNEYS AT LAW —

28 Liberty Street, 30th Floor • New York, NY 10005
Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

August 1, 2017

**VIA ECF**
Hon. Barbara Moses, U.S.M.J.
United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

Re:   *Cano v. D&J Cleaning Services NY, Inc., et al.* – No. 17 Civ. 997 (BCM)

Dear Judge Moses:

As you are aware, this firm represents Plaintiffs Erendira Cano, Yisel Martinez, Rubi Lema, and Ana Matute (collectively, "Plaintiffs") in the above-referenced action. In accordance with the Court's July 11, 2017 Order, *see* ECF No. 22, we write jointly with the Defendants D&J Cleaning Services NY, Inc., Myriam Ramos, and Daniel Ramos (collectively, "Defendants") (together with Plaintiffs, the "Parties") to provide the Court with information as to the fairness of the settlement and respectfully request judicial approval of the Parties' proposed settlement agreement attached hereto as **Exhibit A**.

The agreement provides for the payment of thirty-five thousand dollars ($35,000.00), inclusive of attorneys' fees and costs, to Plaintiffs. For the reasons outlined below, the Parties submit that the Court's approval is warranted.

## BACKGROUND

On February 10, 2017, Plaintiff Cano ("Cano") filed her Class Action Complaint against Defendants on behalf of herself and similarly situated co-workers who were employed by Defendants as cleaning employees at Defendants' commercial and residential cleaning company. *See* ECF No. 1. Specifically, Cano alleged that Defendants failed to provide her and other cleaning employees with the proper minimum wage rates and overtime compensation as required under the Fair Labor Standards Act ("FLSA") and New York Labor law ("NYLL"). *Id*. Furthermore, Cano alleged that Defendants failed to provide her with spread of hours pay when she worked shifts in excess of 10 hours per day as well as unlawfully retained her tips and deducted traveling expenses from her wages in violation of the NYLL. *Id*. Lastly, Cano alleged that Defendants failed to provide her with proper wage notices and accurate wage statements under the NYLL. *Id*. On February 10, 2017, Plaintiffs Yisel Martinez, Rubi Lema, and Ana Matute filed their Consent to Join forms with the Court. *See* ECF Nos. 6, 7, and 8.

## PROCEDURAL HISTORY

Shortly after commencing this action, Plaintiffs served process on Defendants on February 25, 2017. *See* ECF Nos. 13, 14, and 15. On April 18, 2017, Defendants appeared on the matter through their attorney Stephen D. Hans, Esq. *See* ECF No. 17. On April 18, 2017, the Parties filed a letter with the Honorable Judge Andrew L. Carter, Jr. requesting that the matter be referred to this Court for a settlement conference, which Judge Carter, Jr. granted. *See* ECF Nos. 18 and 19. The Parties agreed to appear before this Court on June 22, 2017 for settlement purposes. *See* ECF No. 20. Prior to the settlement conference, the Parties exchanged numerous documents through an informal discovery process. On June 15, 2016, the Parties filed their ex-parte settlement letters with the Court. On June 22, 2017, the Parties participated in a settlement conference before this Court. As a result of the conference, the Parties were able to reach a settlement in principle in the amount of $35,000.00, which was recommended by the Court.

Thereafter, the Parties negotiated the terms of a comprehensive settlement agreement, which was fully executed on July 26, 2017. *See* **Exhibit A**. The settlement negotiations were at all times hard fought and arm's length, and they have produced a result that Plaintiffs' Counsel believes to be in Plaintiffs' best interests in light of the costs and risks of continued litigation and in particular, the risk of being unable to collect **any** amount from Defendants.

## THE SETTLEMENT

After extensive arm's length negotiations, the Parties were able to reach a total settlement agreement of $35,000.00. After attorneys' fees and costs, Plaintiffs will receive $22,771.36 of the total settlement amount, which was allocated to each Plaintiff based on their individual dates of employment, approximate hours worked, and rates of pay. The chart below shows each Plaintiff's estimated weeks worked for Defendants and proportionate share.

| | | |
|---|---|---|
| Erendida Cano | 136.3 Weeks | $10,347.33 |
| Yisel Martinez | 21.6 Weeks | $3,831.37 |
| Rubi Lema | 46.6 Weeks | $5,149.69 |
| Ana Matute | 17.4 Weeks | $3,442.97 |

## THE SETTLEMENT SHOULD BE APPROVED

As the Court pointed out in its Order, *see* ECF No. 22, the Court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement

agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted). Based on the above criteria, the proposed settlement, which provides for the payment of $35,000.00 on or before 30 days from approval and was achieved after hard fought and arm's-length negotiations between experienced counsel, is fair and should be approved.

Based on Plaintiffs' Counsel's knowledge of the facts, regulations, and case law pertaining to Plaintiffs' claims, Plaintiffs' range of possible recovery was between $0.00 and $125,878.00 representing the damages for unpaid minimum wages, overtime compensation, and spread of hours pay as well as other statutory violations and liquidated damages. While the above figures represent extremes, Plaintiffs' Counsel contends that there was a strong possibility that the Plaintiffs could have truly recovered nothing as a result of the collection risks present in this matter. These collection risks were discussed not only in the negotiations between Counsels prior to the settlement conference but also at the settlement conference. When compared to the litigation and collection risks discussed further below, the settlement of $35,000.00, payable in 30 days, is fair, reasonable, and realistic. As such, the first factor weighs in favor of approval.

Factors two and three also weigh in favor of approval. As in any FLSA matter, if the Parties were to engage in a discovery process, the Parties would need to conduct depositions of all parties in order to establish their respective claims and defenses. Such litigation would require the Parties to invest substantial time and expenses. Moreover, both Parties face serious litigation risks. While Plaintiffs believe they will ultimately prevail on their claims, Plaintiffs acknowledge that they face significant risks in establishing liability and damages. These risks include proving that they were paid a daily rate, that they worked the hours they alleged to have worked, and that they were in fact underpaid. From the outset of Plaintiffs' Counsel's communication with Defendants' Counsel, Defendants have vehemently disputed Plaintiffs' allegations. In addition, Defendants dispute Plaintiffs' characterization of Defendants' pay practices and even questioned the employment of one of the opt-in Plaintiffs, Plaintiff Ana Matute. Defendants' defenses are critical as these facts would determine the amount of damages Plaintiffs would be entitled to as well as the Defendants' exposure to liability.

Moreover, and of perhaps greater significance, pursuant to Defendants' Counsel's representations and the potential of matrimonial litigation involving Defendant Daniel Ramos, it is unclear that Defendants could withstand a greater judgment. As a consequence, Plaintiffs would face considerable collection issues after any continued litigation. In addition, it is possible that a higher settlement amount or judgment could force Defendants to declare bankruptcy, which would complicate any collection opportunities and add to the possibility of extensive delays. This settlement resolves a bona fide dispute between the Parties, contains a mutual general release of claims that is equal on both sides, does not contain a confidentiality or non-disparagement clause, and provides a substantial and relatively quick payment to the Plaintiffs. Therefore, it should be approved.

Lastly, factors four and five also weigh in favor of approval. Both Plaintiffs' Counsel and Defendants' Counsel have negotiated at arm's length, as evidenced in the settlement conference

before this Court, and have significant experience handling wage and hour claims. *See Weng v. T&W Restaurant, Inc.*, No. 15 Civ. 8167 (PAE) (BCM), 2016 WL 3566849, at *2 (S.D.N.Y. June 22, 2016) (holding that the fourth and fifth *Wolinsky* factors were met when the settlement terms were negotiated and agreed to by competent and experienced counsel at a settlement conference before the Court).

## ATTORNEYS' FEES AND COSTS

In accordance with Plaintiffs' professional services-contingency fee agreement with Plaintiffs' Counsel, the Consent to Join forms signed by all Plaintiffs, and the Court's rules, the Agreement provides that Plaintiffs' Counsel will recover $12,228.64, equaling one-third of the **net** settlement ($11,385.68) plus expenses ($842.96). The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiffs in their retainer agreements, and a contingency fee of one-third is sufficient to account for the risks associated with representation. Plaintiffs' Counsel has worked without any compensation to date, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved. *See Chauca v. Abitinos Pizza 49th Street Corp.*, No. 15 Civ. 6278 (BCM), 2016 WL 3647603, at *2 (S.D.N.Y. June 29, 2016) (stating that attorneys' fee awards of one third are generally accepted in the Southern District of New York).

As illustrated in **Exhibit B**, through the date of this filing, Plaintiffs' Counsel has spent approximately 43 hours litigating and settling this action. The hours reported are reasonable for a case such as this and were compiled from contemporaneous time records maintained by each attorney participating in the case. Since November 2014, all of Plaintiffs' Counsel's cases have been taken on pure contingency, including all out of pocket costs and expenses. Thus, when Plaintiffs' Counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm. For example, in *Rios et al. v. Louya Corp. d/b/a Jacques Brasserie et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), Plaintiffs' Counsel obtained a verdict of $1,044,512.62 after a five day trial. However, due to the defendants' bankruptcy filings, plaintiffs and Plaintiffs' Counsel have recovered less than 2% percent of the damages and attorneys' fees and costs awarded to them by the court. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2000). Even under the "lodester" method, Plaintiffs' Counsel's one-third fee award is more than reasonable, as they currently have a lodestar multiplier under one. *See Castagna v. Madison Square Garden, L.P.*, Case No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *10 (quoting *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts...")).

Lastly, Plaintiff's Counsel expended $842.96 in litigation costs and expenses. These costs are primarily comprised of filing fees ($400.00), service of process ($409.00), and postage

Hon. Barbara C. Moses, U.S.M.J.
August 1, 2017
Page 5 of 5

---

expenses ($33.96). These costs are commonly reimbursed by courts in this District. *See e.g., Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339 (PAE), 2016 WL 57119799, at *4 (S.D.N.Y. Sept. 30, 2016) (awarding $579.78 for expenses including $400 filing fee and costs of mailing, legal research, and service of process); *see also Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2014 WL 4996248, at *9 (S.D.N.Y. Oct. 7, 2014) (awarding $607 for litigation expenses, including filing fees, service of process, and postage and delivery costs).

\* \* \*

For the reasons enumerated herein, the Parties respectfully submit that the proposed settlement complies with the Second Circuit's and this District's standards and procedures for settlement approval and request that the settlement and the related attorneys' fees and costs be approved by the Court.

We thank the Court for its time and attention.

Respectfully submitted,

Arsenio D. Rodriguez

cc: Counsel of record (via ECF)